**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In Re: SHAWNI MOSHIRI ) | |
| ) | |
| BROADWAY TIFFANY, LLC ) | |
| and TONY FAHAM, ) | Bankruptcy No.: 14-27900 |
| ) | |
| Adversary Plaintiffs, ) | Adversary Proceeding No.: 14-A-782 |
| ) | |
| v. ) | Judge Jack B. Schmetterer |
| ) | |
| SHAWNI MOSHIRI, ) | |
| ) | |
| Adversary Defendant. ) | |

**PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

This matter having come on before this Court on the Adversary Plaintiffs BROADWAY TIFFANY, LLC and TONY FAHAM's motion for a default judgment, the Adversary Defendant SHAWNI MOSHIRI having failed to answer or otherwise respond to the Adversary Plaintiffs' complaint or to appear in court, the Adversary Plaintiffs' having appeared by their attorney Joel F. Handler, the Court enters the following:

**I.  PROPOSED FINDINGS OF FACT**

1.  The Adversary Plaintiff BROADWAY TIFFANY, LLC (hereinafter referred to as "BROADWAY") was a limited liability company organized on or about April 12, 2005 to acquire, invest in, develop, contract, market, sell, lease and manage real estate.

2.  BROADWAY's members consisted of Adversary Plaintiff TONY FAHAM (hereinafter referred to as "FAHAM"), Adversary Defendant SHAWNI MOSHIRI (hereinafter referred to as "MOSHIRI") and Dennis Nardoni. Each held a thirty-three percent (33%) interest in BROADWAY.

1

3. Upon the organization of BROADWAY, each of the members anticipated and intended that BROADWAY would participate with another entity in acquiring, investing in, and developing real property at or around 5204-5246 N. Broadway in Chicago, Illinois.

4. To that end, each of the members pledged an initial capital contribution of $100,000.00.

5. Each of the members agreed that in order for BROADWAY to participate with another entity in acquiring, investing in and developing 5204-5246 N. Broadway, the following obligations would be imminent:

    a. BROADWAY would be required to procure a loan from Midwest Bank and Trust in the amount of not more than $2,000,000.00;

    b. Each of the members would be required to make additional contributions from time to time as deemed by the majority of the members to be reasonably necessary to meet the expenses and obligations of BROADWAY in acquiring and developing the 5204-5246 Broadway property; and

    c. Each of the members would be obligated to personally guarantee the loan from Midwest Bank to BROADWAY.

6. In order to meet these obligations, on April 12, 2005, the members entered into an operating agreement for BROADWAY.

7. Pursuant to Section 8.02 of the operating agreement, each member was required to make such additional capital contributions as determined by the members owning the majority of the interest from time to time to be reasonably necessary to meet the

expenses and obligations of BROADWAY.

8. At the time that MOSHIRI entered into the operating agreement, he knew that he would not pay his respective contribution in order to meet the expenses and obligations of BROADWAY.

9. Notwithstanding this knowledge and intent, MOSHIRI repeatedly told both FAHAM and Mr. Nardoni that he clearly intended to pay his proportionate share of the contributions in order to acquire and develop the 5204-5246 Broadway property.

10. Moreover, MOSHIRI told both FAHAM and Mr. Nardoni to advance the monies for him and that he would promptly pay them back.

11. On or about April 25, 2005, BROADWAY procured from Midwest Bank a loan in the principal amount of $1,700,000.00. The purpose of this loan was to assist in the purchase, financing and development of the 5204-5246 Broadway property.

12. Based on MOSHIRI's repeated assurances and misrepresentations, FAHAM and Mr. Nardoni collectively paid over $574,862.31 to Midwest Bank.

13. In May, 2007, FAHAM requested that MOSHIRI pay his proportionate share of the loan.

14. At that time, MOSHIRI advised FAHAM that he should pay his share and that MOSHIRI would promptly pay FAHAM back.

15. Based on MOSHIRI's representations, FAHAM and Mr. Nardoni paid MOSHIRI's share.

16. In August, 2007, FAHAM requested that MOSHIRI pay his respective share of the money owed.

3

17. At that time, MOSHIRI indicated that he would forward payment, but requested that FAHAM advance the funds and that he would promptly pay him back.

18. Based on MOSHIRI's representations, FAHAM and Mr. Nardoni paid MOSHIRI's share.

19. Between August, 2007 and August, 2008, FAHAM repeatedly requested that MOSHIRI pay his representative share of the loan.

20. On each occasion, MOSHIRI indicated that he either sent a check to FAHAM or that he was going to pay him his share and that FAHAM should continue to pay the monies and he would promptly pay him back.

21. Once again, based on MOSHIRI's assurances, FAHAM and Mr. Nardoni paid MOSHIRI's share of the property.

22. On or about October 17, 2008, BROADWAY sent notification to MOSHIRI requesting his pro-rata share of additional capital contributions to BROADWAY no later than November 13, 2008.

23. MOSHIRI knew at the time that he made these comments to FAHAM that they were false since he never intended to make any payments under the loan agreement.

24. MOSHIRI made these misrepresentations with the intent to deceive FAHAM and Mr. Nardoni since he had no intent on paying them for his share of the payments made to Midwest Bank.

25. The Adversary Plaintiffs obtained a judgment in the Circuit Court of Cook County, Law Division (Case No. 09 CH 45211) against MOSHIRI in the amount of $191,620.77 on January 24, 2012.

4

26. On November 15, 2014, the Adversary Plaintiffs filed their adversary complaint against MOSHIRI.

27. Service of the Adversary Plaintiffs' complaint and summons was made on MOSHIRI and his attorney on November 15, 2014 by regular first class U.S. Mail, postage fully prepaid, addressed to MOSHIRI at 800 N. Michigan Avenue, Unit 2203, Chicago, Illinois 60611 and to his attorney at 7354 N. Milwaukee Avenue, Niles, Illinois 60714.

28. As of the date of this order, no answer or responsive pleading has been filed by MOSHIRI and MOSHIRI has not appeared before this Court.

## II. CONCLUSIONS OF LAW

29. This Court has jurisdiction over this case pursuant to 28 USC §§ 157(a) and 1334(b) and 11 USC § 523.

30. This adversary proceeding is a core proceeding under 28 USC §§ 157(b)(2)(I) and 157(b)(2)(J) and it seeks a declaratory judgment for the determination of the dischargeability of a particular debt.

31. This Court finds that the Adversary Plaintiffs effectuated proper service of their complaint upon the Adversary Defendant.

32. The Adversary Defendant has failed to file a timely answer or other responsive pleading pursuant to Rule 12 of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure, has not requested an extension of time to do so and has not presented a defense or otherwise appeared in this matter.

33. The Adversary Defendant's failure to answer the allegations of the complaint within the time required by Rule 7012 of the Federal Rules of Bankruptcy Procedure

constitutes an admission of such allegation *In re the matter of Magafici*, 16 B.R. 246, 248 (Bankr.N.D.Ill. 1981).

34. Based on the factual record in evidence before this Court, the Adversary Plaintiff has demonstrated a prima facie case under 11 USC § 523(a)(2)(A) and is entitled to a non-dischargeable judgment.

35. Default judgments in bankruptcy proceedings are governed by Rule 55(b) of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7055 of the Federal Rules of Bankruptcy Procedure.

36. Rule 8(d) of the Federal Rules of Civil Procedure, incorporated by Rule 7008(b) of the Federal Rules of Bankruptcy Procedure, provides an allegation to which a "responsive pleading is required" is deemed admitted when not denied in the responsive pleading.

37. Thus, the Court will enter default judgment where the evidence establishes a prima facie claim that the debt in question is excepted from discharge under 11 USC § 523(a)(2)(A).

38. 11 USC § 523(a)(2)(A) provides as follows:

> (a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor … from any debt---
>
> *3 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by---
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

6

39. In order to except a debt from discharge under § 523(a)(2)(A), a creditor must establish the following elements: (1) the debtor made representations to the creditor that he either knew to be false, or made with such reckless disregard for the truth as to constitute willful misrepresentations; (2) the debtor intended to deceive the creditor; and (3) the creditor justifiably relied on the misrepresentations to its detriment *Mayer v. Spanel Int'l Ltd.*, 51 F.3d 670, 673 (7th Cir. 1995), cert. denied, 516 U.S. 1008 (1995).

40. A creditor need only prove its case by a preponderance of the evidence *Grogan v. Garner*, 498 U.S. 279, 286 (1991).

41. The determination of whether the debtor had the requisite intent to defraud is a factual issue to be determined upon review of all relevant circumstances surrounding a particular case *In re Paul*, 266 B.R. 686, 694 (Bankr.N.D.Ill. 2001); *In re Berz*, 173 B.R. 159, 162 (Bankr.N.D.Ill. 1994).

42. Courts must look at the totality of circumstances to determine whether the debtor's conduct was calculated to deceive or cheat the creditor *Mercantile Bank v. Canovas*, 237 B.R. 423, 428 (Bankr.N.D.Ill. 1998).

43. The Adversary Defendant's repeated representations to both TONY FAHAM and Mr. Nardoni that he intended to pay his proportionate share of the contributions in order to acquire and develop the 5204-5246 Broadway Property or that he sent them his payments were false representations of fact which MOSHIRI knew to be false when made and which were made with intent to deceive the Adversary Plaintiffs and upon which the Adversary Plaintiffs justifiably relied in acquiring and attempting to develop the property.

44. The Adversary Plaintiffs justifiably relied on the misrepresentations of the Adversary Defendant to their detriment.

45. The Adversary Plaintiffs have been damaged based on the false representations of the Adversary Defendant in the amount of $191,620.77.

46. The aforementioned actions by the Adversary Defendant constitute fraud within the meaning of 11 USC § 523(a)(2)(A) which created a debt owed by the Adversary Defendant to the Adversary Plaintiffs that is non-dischargeable in bankruptcy in the amount of $191,620.77.

47. Pursuant to 11 USC § 523(a)(2)(A), this Court declares that MOSHIRI's debt to the Adversary Plaintiffs in the amount of $191,620.77 is not dischargeable in bankruptcy since MOSHIRI procured this debt through fraud.

48. A judgment order will follow.

Respectfully submitted,

/s/ Joel F. Handler
JOEL F. HANDLER (#1115812)
One E. Wacker Drive, Suite 500
Chicago, Illinois 60601
(312) 832-0008
Attorney for the Adversary Plaintiffs,
BROADWAY TIFFANY, LLC
and TONY FAHAM

8