UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In Re: SHAWNI MOSHIRI | ) |
| | ) |
| BROADWAY TIFFANY, LLC and TONY FAHAM, | ) ) |
| | ) Bankruptcy No.: 14-27900 |
| Adversary Plaintiffs, | ) ) Adversary Proceeding No.: 14-A-782 |
| | ) |
| v. | ) Judge Jack B. Schmetterer |
| | ) |
| SHAWNI MOSHIRI, | ) ) |
| Adversary Defendant. | ) ) |

### AFFIDAVIT

TONY FAHAM being duly sworn deposes and states:

1. I am one of the Adversary Plaintiffs in this action. I have knowledge of the facts stated in this affidavit and, pursuant to penalty of perjury, I certify the facts stated herein are true and correct.

2. I have known Mr. Moshiri for 45 years and prior to this incident, he was a friend of mine and I did socialize with him.

3. Upon the organization of Broadway Tiffany, LLC, each of the members anticipated and intended that Broadway would participate with another entity in acquiring, investing in, and developing real property at or around 5204-5246 N. Broadway in Chicago, Illinois.

4. Each of the members agreed that in order for Broadway to participate with another entity in acquiring, investing in and developing 5204-5246 N. Broadway, the following obligations would be imminent:

1

    a. Broadway would be required to procure a loan from Midwest Bank and Trust in the amount of not more than $2,000,000.00;

    b. Each of the members would be required to make additional contributions from time to time as deemed by the majority of the members to be reasonably necessary to meet the expenses and obligations of Broadway in acquiring and developing the 5204-5246 Broadway property; and

    c. Each of the members would be obligated to personally guarantee the loan from Midwest Bank to Broadway.

5. In order to meet these obligations, on April 12, 2005, the members entered into an operating agreement for Broadway. A true and correct copy of the operating agreement is attached hereto as ***Exhibit A***.

6. Pursuant to Section 8.02 of the operating agreement, each member was required to make such additional capital contributions as determined by the members owning the majority of the interest from time to time to be reasonably necessary to meet the expenses and obligations of Broadway.

7. At the time that Mr. Moshiri entered into the operating agreement, Mr. Nardoni and I had an in-person conversation with him at Nomi Restaurant located at 800 N. Michigan Avenue where we all lived. Our conversation lasted fifteen minutes. Mr. Moshiri told me that he would not be able to pay his respective contribution in order to meet the expenses and obligations of Broadway because he was in financial distress and

he did not have the money to pay it. He requested that Mr. Nardoni and I pay his contribution. He assured me that he would be able to repay us later.

8. Similarly, between August, 2007 and August, 2008, I had monthly conversations with Mr. Moshiri in which I requested that he pay his representative share of the monthly loan payment to Midwest Bank.

9. Moreover, in October or November, 2008, Mr. Moshiri indicated to me that he had sent a check to me which represented his proportionate share of the amount owed for the month.

10. Having not received the check, I called Mr. Moshiri in November, 2008 and asked him where the check was. Mr. Moshiri indicated that he did not understand why I did not receive the check. He related, however, that Mr. Nardoni and I should pay his share and he assured me that he would repay us in the immediate future.

11. Based on Mr. Moshiri's representations, Mr. Nardoni and I continued to pay his share.

12. Mr. Nardoni and I never received any payment from Mr. Moshiri.

13. We collectively paid Midwest Bank $574,862.31. Mr. Moshiri's share of that amount was $191,620.77.

14. Mr. Moshiri's representations to us during this period were clearly false since he was not in financial distress. Rather, he did have the money to pay his representative share but just fraudulently induced Mr. Nardoni and me to pay it.

15. Mr. Moshiri was not in financial distress since the documents I obtained in the lawsuit that was filed against him in the Circuit Court of Cook County (Case No. 09 CH 45211) revealed that Mr. Moshiri had available assets to pay his proportionate share.

16. For example, Mr. Moshiri's 2009 income tax return (**Exhibit B**) clearly demonstrates that he had assets to pay his representative share, but misrepresented to both Mr. Nardoni and me that he was in financial distress and thus, had no intent on paying his capital contribution in order to meet the expenses and obligations of Broadway.

17. Moreover, Mr. Moshiri owned a condominium at 800 N. Michigan Avenue, drove a 2006 Bentley which he always valeted at 800 N. Michigan Avenue and owned a two bedroom 46 foot power boat.

FURTHER AFFIANT SAITH NOT.

_____
TONY FAHAM

Subscribed and sworn to before me this __3__ day of April, 2015.

_____
Notary Public

Official Seal
Kimberly M Stefanek
Notary Public State of Illinois
My Commission Expires 03/23/2019

4